## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | **Crim. No. 22-cr-365 (CJN)** |
| | : | |
| BRIAN PATRICK MIGLIORE, | : | |
| | : | |
| Defendant. | : | |

### MEMORNDUM IN SUPPORT OF DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this memorandum in support of its request that the defendant be held without bond. As explained below, the defendant should be detained pursuant to 18 U.S.C. § 3142(f)(1)(C) (Controlled Substances Act offense) and 18 U.S.C. § 3142(f)(2)(A) (risk of flight).

### Procedural History

The defendant is charged by indictment with one count of Conspiracy to Distribute and Possess with Intent to Distribute 5 Grams or More of Methamphetamine and a Detectable Amount of Oxycodone and Morphine, in violation of Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(1)(B). There is a rebuttable presumption that he be held under 18 U.S.C. § 3142(e)(3)(A).

The defendant was arrested in the Eastern District of New York and presented there on the pending charges on November 15, 2022. The matter was continued at the request of the defendant until November 18, 2022. That day, Magistrate Judge Roanne Mann, after reviewing the pretrial services report and hearing from the parties, ordered that the defendant be held until his appearance in this court.

1

## Relevant Legal Authorities

This Court may detain a defendant upon motion of the government in a case that, as here, involves "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act…."  18 U.S.C. § 3142(f)(1)(C).  Here, there is a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(A).  Accordingly, "[s]ubject to rebuttal by the person, *it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community* if the judicial officer finds that there is probable cause to believe that the person committed" the predicate offense.  Id.  The indictment, standing alone, constitutes probable cause that the person charged committed the offenses charged.

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders.  But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight."  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); United States v. Rueben, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . .  In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); United States v. Rodriguez, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government

retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant . . . see also United States v. Jessup, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting "bursting bubble" approach)" (internal citation omitted)); see also United States v. Ali, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

Relevant to that ultimate determination are the usual factors under 18 U.S.C. § 3142(g) – namely, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court may also detain a defendant upon motion of the government or the Court's own motion in a case that involves a "serious risk" that the defendant "will flee." 18 U.S.C. § 3142(f)(2)(A). Where "risk of flight" is the basis for detention, the presumption of detention does not apply, but the government must only prove that no conditions will reasonably assure the defendant's appearance or community safety by a preponderance of the evidence standard – not clear and convincing evidence. See United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996).

## Argument

A. **Nature and Circumstances of the Offenses Charged**

1. **Monopoly Market**

In late 2019, the FBI has been investigating a darknet market known as Monopoly Market ("Monopoly").  Monopoly operated much like a conventional e-commerce website:  users could browse goods for sale from Monopoly's home page which was organized by category.  These categories included cannabis, ecstasy, opioids, prescriptions, psychedelics, and stimulants. Monopoly was set up as a "hidden service" or "onion service" on the "dark web" also known as the "dark net."  The dark web is a part of the World Wide Web accessible only through anonymity-enhancing platforms such as the Tor network, a special network of computers on the Internet designed to conceal users' true IP addresses.  Monopoly required that all transactions be conducted in cryptocurrencies, including Bitcoin and Monero.

To operate as a vendor on Monopoly, vendors first had to complete an application. This application was reviewed by the Monopoly operator using the vendor name "Monopoly" on the Monopoly Market and accompanying Monopoly Forum and the moniker "u/MonopolyOfficial" on the darknet forum Dread. The application requested a variety of information from potential vendors, including descriptions of the items they intended to list, markets the vendors had previously sold on, PGP Public Keys associated with their current and previous vendor identities, and how vendors wished to pay their commissions to the Monopoly operator(s).[1] The Monopoly

---

[1] PGP or "Pretty Good Privacy" is software that allows for the encryption and decryption of text and files. GPG is an open-source implementation of PGP that is free. PGP/GPG encryption uses two "keys" referred to as the Public Key and the Private Key. A user's Public Key, as the name implies, is meant to be shared widely to allow people to encrypt messages to the user. The recipient then uses their private key to decrypt a message or file that was encrypted using their public key. In practice, this means that Private Keys are not widely shared to maintain their integrity and security, but that Public Keys must be made available to others to facilitate encrypted communication. As part of generating a Public Key and a Private Key, also referred to as a "Key Pair," users may, but are not required to, provide an e-mail address and/or name or moniker that may be incorporated into the header of the Public Key and subsequently visible when the public key is imported into PGP/GPG software.

operator(s) also had to confirm the inventory of the prospective vendor, that is, the vendor actually had the drugs it was requesting to sell. Usually, this was done by the vendor taking photographs of its drug stock. The Monopoly operator(s) would typically then make comments on these applications such as requesting additional clarifying information, advising that the prospective vendor had been accepted, or denying the application. Denials would typically provide a reason for the denial and instructions on how to improve their chance of being accepted. These vendor applications were posted publicly on Dread and later the Monopoly Forum.

### 2. **Self-Sabotage**

One of the vendors on Monopoly was known as Self-Sabotage. Its application on Dread had the user name "sicktoothpick" and the password "TryHarder17." Agents learned that the same password had been used on another market, the Wall Street Market. Agents located a Skype account associated with "sicktoothpick" and the account holder for that account was listed as Brian Patrick Migliore (DOB XXX) who resides in Brazil.

In addition, a subpoena to Google for the account brianmigliore@gmail.com showed a recovery address of "sicktoothpick." A search warrant for the account revealed photos showing narcotics for sale displayed as they were on the Monopoly site including the distinctive font used to spell Self-Sabotage. Finally, after the Monopoly site was taken down, the user of that Google account searched the internet for Monopoly to learn what happened to the site.

During its investigation, the FBI confirmed on numerous occasions that Monopoly was used to commit crimes in the United States. Specifically, undercover FBI employees in the District of Columbia, as well as the Eastern District of Virginia, purchased narcotics from Self-Sabotage and received the narcotics in the District of Columbia and Virginia. The controlled purchases from Self-Sabotage totaled approximately 12 grams of methamphetamine. Self-Sabotage also sold

prescription pain killers, morphine, and other narcotics.  Records show that Self-Sabotage sold an additional 178 grams of a mixture and substance containing methamphetamine through Monopoly. The government cannot be certain of the purity level in those narcotics, however.

Even apart from the presumption that applies in narcotics cases, this factor weighs in favor of detention.  The defendant is facing a mandatory-minimum sentence of five years and a maximum sentence of 40 years.  The lengthy potential sentence provides strong incentive for the defendant to flee.  See United States v. Shulkin, 2019 WL 5867289 at *2 (S.D. Ohio) (denying defendant's bond motion when he was facing a maximum penalty of 20 years and facing a significant guideline sentence); United States v. Morris, 2015 WL 3752356 (S.D. Miss.) (denying bond motion in drug case when defendant's family resided in Thailand and defendant faced significant penalties if convicted).

### B.  Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.  The evidence against the defendant is very strong.  As noted above, he is directly tied to Self-Sabotage by various social media and personal email accounts.

Moreover, after his arrest, he waived his Miranda rights and admitted his role in the offense to FBI agents.  In particular, he admitted that he was the only person with access to the Self Sabotage account. He obtained the prescription drugs himself and worked with another person to list the methamphetamine. He admitted that he started the Self Sabotage account, procured the prescription drugs in Brazil, and transported them to the U.S. in his luggage, while another person purchased the methamphetamine in the Atlanta area.  The defendant shipped the drugs himself from Atlanta, New York, and Miami and also dropped drugs off to another person who shipped them from Atlanta.  The defendant admitted that he shipped drugs as recently as the day of his

arrest.  This factor weighs in favor of detention.  See, e. g., United States v. Boustani, 356 F. Supp. 3d 246, 253 (E.D.N.Y. 2019) (noting that strong evidence of guilt in a case with a lengthy likely sentence provides strong incentive for a defendant to flee).

   C.   **The Defendant's History and Characteristics**

   As noted in the Pre-Trial Services Report (PSR) from the Eastern District of New York, the defendant has no prior convictions.  However, he resides in Brazil with his wife.  He apparently travels to the United States regularly, but he has no strong ties to this country.   Accordingly, detention is also appropriate under 18 U.S.C. §§ 3142(f)((2)(A) (serious risk of flight).  See United States v. Rudolph, 582 F. Supp. 3d 804, 815-16 (D. Col. 2022) (defendant's proposed conditions electronic monitoring and surrendering passport would not reasonably assure his appearance or the safety of the community because those conditions at best limit a fleeing defendant's head start).

   D.   **Danger to the Community**

   The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. As noted above, based on the charges in the indictment, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense.  18 U.S.C. § 3142 (e)(3)(A).  Under the Bail Reform Act, 18 U.S.C. §§ 3142 et seq., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." United States v. Strong, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." Strong, 775 F.2d at 507.  As noted by the D.C. Circuit:

The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:

> Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses. Accordingly, this factor also weighs in favor of detention.

## Conclusion

The United States respectfully requests that the Court detain the defendant without bond

pending trial.

Respectfully submitted,
MATTHEW GRAVES,
UNITED STATES ATTORNEY


By:      /s/ *Nihar Mohanty*
Nihar R. Mohanty
D.C. Bar No. 436-686
Assistant United States Attorney
United States Attorney's Office for D.C.
Patrick Henry Building
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
E-mail: Nihar.Mohanty@usdoj.gov
Telephone: (202) 252-7700